UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN THE MATTER OF:

JOY LENORE MARSHALL
Ohio Atty. Reg. No. 0073585,
RESPONDENT

Case No.: 1:14-MC-055
CHIEF JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

On November 6, 2014, the Supreme Court of Ohio decided *Disciplinary Counsel v. Marshall*, No. 2013-0924, 2014 WL 7671606 (Ohio 2014), in which it ordered Respondent Joy Lenore Marshall to be suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that she commit no further misconduct and make full restitution to William P. Campbell and M. David Smith in an amount to be determined by the Cuyahoga County Court of Common Pleas in *Dickson & Campbell, L.L.C. v. Marshall*, Cuyahoga C.P. No. CV–07–627533. In accordance with Rule II of the Model Federal Rules of Disciplinary Enforcement, adopted by this Court on February 1, 1979, this Court issued an Order requiring Respondent to show cause why the Court should not impose the identical discipline imposed by the Supreme Court of Ohio. Respondent filed a response to this Court's Order to Show Cause on January 5, 2015 (ECF No. 5), and amended that response on January 6, 2015 ("Amended Response") (ECF No. 6). For the reasons that follow, this Court likewise suspends Respondent from the practice of law in this Court for two years, with the same conditions.

I.

Respondent, Joy Lenore Marshall of Columbus, Ohio, Attorney Registration No. 0073585, was admitted to the practice of law in Ohio in 2002. In January 2012, relator,

disciplinary counsel, submitted a complaint charging Marshall with professional misconduct arising from her conduct during postjudgment proceedings initiated by a personal-injury client's former counsel to establish and collect the value of their services pursuant to the doctrine of quantum meruit. Relator alleged that Marshall engaged in dishonesty, fraud, deceit, or misrepresentation and conduct that was both prejudicial to the administration of justice and adversely reflected on her fitness to practice law. Relator further alleged that Marshall charged a clearly illegal or excessive fee, failed to disclose potential conflicts of interest before accepting the client's employment, and knowingly or recklessly made false statements concerning the integrity of the presiding judge. *Disciplinary Counsel v. Marshall*, 2014 WL 7671606 at ¶¶ 1, 2.

A probable-cause panel of the Board of Commissioners on Grievances and Discipline found that probable cause existed to file a formal complaint and certified relator's complaint to the board. *Id.* ¶ 3.

After conducting a hearing on the matter, a separate panel issued a report finding that relator had proved by clear and convincing evidence that Marshall had committed most, but not all, of the violations and recommended that the allegations related to the amount of Marshall's fee and the failure to disclose potential conflicts of interest be dismissed. Based on the proven misconduct, the panel recommended that Marshall be suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that she engage in no further misconduct and pay her client's former counsel an amount to be determined by the Cuyahoga County Court of Common Pleas. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. *Id.* ¶ 4.

Marshall objected to the board's findings of misconduct, arguing to the Ohio Supreme Court that she was honest and acted within the bounds of the law while zealously representing

her client and defending her attorney fees. She also argued that she had a reasonable basis for making allegations that the trial judge exhibited an improper racial or gender bias against her. She further contended that the board's recommended sanction was too harsh. *Id.* ¶ 5.

The Ohio Supreme Court overruled Marshall's objections, adopted the board's report, and suspended Marshall from the practice of law in Ohio for two years, with the second year stayed on conditions. The Ohio Supreme Court held that Marshall distributed $65,000 in settlement funds in contravention of court orders violating Disciplinary Rules and Rules of Professional Conduct (RPC); that Marshall violated a RPC by alleging that judge's rulings against her were influenced by improper racial and gender bias; and that a suspension of two-years, with the second year stayed on conditions, was warranted.

## II.

Rule II of the Model Federal Rules of Disciplinary Enforcement ("Rule II") provides for the imposition of reciprocal discipline against a member of the Bar of this Court when discipline has been imposed by another court. Rule II(D) provides:

> [T]his Court shall impose the identical discipline unless the respondent-attorney demonstrates, or this Court finds, that upon the face of the record upon which the discipline in another jurisdiction is predicated it clearly appears:
>
> 1. That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> 2. That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> 3. That the imposition of the same discipline by this Court would result in grave injustice; or
>
> 4. That the misconduct established is deemed by this Court to warrant substantially different discipline.

3

Rule II(D)(1) to (4).[1]

"Though this Court is not empowered to directly review challenges to state disciplinary proceedings (even if constitutional infirmities are alleged), the Court must examine alleged defects in the state proceedings when deciding whether it will impose reciprocal discipline under Rule II." *In re Squire*, No. 1:11-MC-053-GLF, 2012 WL 995300, at *4 (S.D. Ohio Mar. 22, 2012) (citing *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009)). "[F]ederal courts may give considerable weight to the findings and conclusion of the state courts in such disciplinary matters, but it is ultimately the responsibility of the federal courts to determine whether a member of the federal bar is fit to practice in federal court." *In re Cook*, 551 F.3d at 550.

### III.

Respondent sets forth four reasons why this Court should not impose upon her the "identical discipline" imposed by the Ohio Supreme Court. It appears that in her third and fourth arguments Respondent posits that the imposition of the same discipline by this Court would result in grave injustice and/or the misconduct established warrants substantially different discipline. As to her first two arguments, they implicate due process concerns and infirmity of proof issues.

With regard to due process, the Sixth Circuit explains in the disbarment context:

> Attorney disciplinary proceedings are not civil actions and not criminal prosecutions. Nevertheless, disbarment involves "adversary proceedings of a quasi-criminal nature." *Ruffalo*, 390 U.S. at 551. An attorney facing disbarment thus is "entitled to procedural due process, which includes fair notice of the charge." *Id.* at 550. In addition, courts must provide "ample opportunity . . . to show cause why an accused practitioner should not be disbarred." *Theard v. United States*, 354 U.S. 278, 282 (1957).

---

[1] The Model Rules of Disciplinary Enforcement, adopted by this Court in 1979, are publicly available as an appendix to the Court's Local Civil and Criminal Rules. *See* http://www.ohsd.uscourts.gov/localrules.htm.

4

*In re Cook*, 551 F.3d at 549 (parallel citations omitted). As to the infirmity of proof, viewing "the face of the record," the proof must give rise to the "clear conviction that this Court could not consistently with its duty, accept as final the conclusion on that subject." *In re Squire*, 617 F.3d 461, 470 (6th Cir. 2010).

### 1. Respondent's First Argument

> The disciplinary counsel, in its prosecution of the case, called no witnesses to testify regarding the alleged misconduct. I had no opportunity to cross examine my accuser. My accusers position was one of a court docket and filings. While the disciplinary counsel did not accept my filing regarding judicial bias, as fact, so the entire testimony against me was not sworn, but a court record, which was inaccurate and incomplete. It could not be sworn and could not be cross-examined.

(Amended Response at 3.) Respondent's argument is not well taken.

Respondent does not claim, nor does the record reflect, that she was not given fair notice of the charges against her or ample opportunity to show cause why she should not be disciplined. Respondent offers no proof that the record reviewed by the disciplinary counsel was inaccurate or incomplete. Nor can this Court divine any inaccuracies or incompleteness in the record.

The board reviewed in detail the agreement Respondent made to represent a client. Respondent negotiated with opposing counsel and one month after commencing her representation, settled the claim for $150,000. The court journalized an entry dismissing the case with prejudice, but expressly retained jurisdiction over all postjudgment motions. The board then reviewed the postjudgment motion of the client's former counsel who had filed a charging lien and a motion to enforce it. *Disciplinary Counsel v. Marshall*, 2014 WL 7671606 at ¶¶ 7–12.

The trial court held a hearing on the former counsel's motion, to which Respondent was more than 30 minutes late. Before an attorney assisting Respondent finished cross-examining former counsel and before Respondent had the opportunity to present evidence of the work she had performed in the matter, the trial judge advised the parties that the hearing would be

continued. The judge gave the $150,000 settlement check to Respondent with direction not to disburse more than $85,000 of the proceeds to her client, and to hold the remainder in a trust account pending resolution of the attorney-fee dispute. *Id.* ¶¶ 13–18.

The following month, May 2006, Respondent engaged in a multipronged effort to avoid the enforcement of former counsel's charging lien. She moved to dismiss former counsel's motion and sought writs of prohibition from the court of appeals (for a second time) and from the Ohio Supreme Court, but her efforts were unsuccessful. *Id.* ¶ 19.

Then in June 2006, the trial judge issued an entry stating that former counsel had withdrawn the pending motion to enforce their charging lien and advised the court that they intended to intervene in the proceeding to enforce their lien. Respondent interpreted this entry as an opportunity to distribute the funds that she had previously been ordered to hold in trust pending the resolution of the attorney-fee dispute. *Id.* ¶¶ 20, 21.

The next month, Respondent filed an affidavit of disqualification in the Ohio Supreme Court, alleging that the trial judge had engaged in a pattern of biased conduct against her and should therefore be disqualified from presiding over the postjudgment motions. Finding no evidence of bias or prejudice at that time, Chief Justice Moyer denied the affidavit of disqualification and two motions for reconsideration. *Id.* ¶ 22.

Respondent continued her efforts to prevent a ruling on former counsel's motion, filing a second complaint in prohibition followed by motions for injunctive relief and an emergency peremptory writ in the Ohio Supreme Court. *Id.* ¶ 23,

The board found that Respondent's distribution of the settlement funds in contravention of the court's orders violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting a lawyer

6

from engaging in conduct that is prejudicial to the administration of justice), and 1–102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *Id.* ¶ 24

Respondent withdrew as counsel and a hearing on the former counsel's motion resumed in her absence. The trial judge "took the unusual step of ordering her to leave the courtroom, and [Respondent] complied." *Id.* ¶ 25. Respondent received a copy of the court's August 15, 2006 order directing her to retain $4,557 for her fees and transfer the remaining $60,443 that should have remained in her trust account to another entity, who was to distribute $50,443 to former counsel and the remaining $10,000 to the client. The appellate court dismissed her appeal as untimely, and the Ohio Supreme Court declined to accept jurisdiction. *Tyus v. Grand Pointe Health Community,* 8th Dist. Cuyahoga No. 88763; *discretionary appeal not accepted,* 115 Ohio St.3d 1420, 2007-Ohio-5056, 874 N.E.2d 537. *Disciplinary Counsel v. Marshall,* 2014 WL 7671606 at ¶ 28.

Former counsel sued Respondent in a civil action in the Cuyahoga County Court of Common Pleas in which they alleged that Respondent had engaged in fraud, conversion/theft, embezzlement, and tortious interference with a business relationship, and they sought both compensatory and punitive damages. *Dickson & Campbell, L.L.C. v. Marshall,* Cuyahoga C.P. No. CV–07–627533. Respondent counterclaimed for fraud, interference with contractual relations, libel, abuse of process, and intentional and negligent infliction of emotional distress. *Disciplinary Counsel v. Marshall,* 2014 WL 7671606 at ¶ 29. Summary judgment was granted to former counsel.

Respondent petitioned for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio. In that proceeding, Respondent offered

conflicting testimony as to whether she initiated the proceedings to discharge the debt she owed to former counsel. *Id.* ¶ 31, 32. The court ultimately found that the debt to former counsel was not dischargeable in bankruptcy. The United States District Court for the Southern Division of Ohio affirmed the bankruptcy court's decision, *Marshall v. Dickson & Campbell, L.L.C.* (*In re Marshall*), No. 2:10-CV-00543, 2011 WL 249500 (S.D. Ohio Jan. 26, 2011). *Disciplinary Counsel v. Marshall*, 2014 WL 7671606 at ¶ 32.

Respondent was ordered at two separate times to appear in the trial court and show cause why she should not be held in contempt. Respondent was arrested on one occasion for being over one hour late without a reasonable excuse. The board found that her tardiness at the hearing without a reasonable excuse adversely reflected on her fitness to practice law and was prejudicial to the administration of justice in violation of DR 1–102(A)(5) and (6). *Id.* ¶¶ 33, 34.

At the second hearing, Respondent refused to answer direct questions from the court and was held in contempt and ordered jailed. The board found that Respondent's incomplete and misleading answers to direct questions posed by the trial judge violated DR 1–102(A)(4). *Id.* ¶ 36.

Respondent appealed the court's contempt finding to the Eighth District Court of Appeals, which granted her request for release from jail on bond pending appeal. In December 2007, the court of appeals affirmed the finding of contempt but remanded the case to the trial court for further proceedings to resolve disputes regarding which parties were still owed money and whether Respondent retained any funds that did not belong to her. The board found that Respondent's failure to abide by the court's order to produce her trust-account and financial records at the January 9, 2008 hearing, in light of her testimony at the disciplinary hearing that she had done nothing to prepare for the hearing and was not even sure that she had previously

8

produced the records, violated Prof. Cond. R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *Id.* ¶ 40.

Respondent also appealed the second finding of contempt alleging judicial racial and gender bias against her by the trial judge. *Id.* ¶ 41, 42. The board found that her allegations of racial and gender bias against the judge were unsubstantiated and unreasonable and therefore violated Prof. Cond. R. 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer), 8.4(d), and 8.4(h). *Id.* ¶ 43.

The record then goes on to detail the Ohio Supreme Court's review of the board's findings. It reviewed in detail Respondent's testimony at her disciplinary hearing and her objections to the board's findings. *Id.* ¶ 43–68.

Based on the record of the hearing before the board, this Court cannot say that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject. Nor does the record reflect that Plaintiff was not provided with fair notice of the charges against her and ample opportunity to show cause why she should not be disciplined.

### 2. Respondent's Second Argument

> The most egregious act alleged to have been committed by me was the alleged Recklessly Made False Statements concerning a Judicial Officer. These alleged statements were Disparate Treatment arguments and Equal Protection Arguments. The ability to make these arguments in an appeal, should be protected by Due Process and the right to be heard. These statements were not rants of racial bias in open court. They were a set of facts regarding a distinct and drastic difference in treatment between myself, a member of protected classes, and those not of those classes. I believed that the argument was valid, not reckless, and that it is unconstitutional not to allow them. The court appeals did not sanction me for the argument nor did it file a disciplinary complaint for it. I do not believe this court, a Federal Court, would have found such an argument a violation of Attorney Conduct.

9

(Amended Response at 3.) Respondent's contention is not well taken.

The record does not show that Respondent was denied due process and/or equal protection in her right to be heard. The board and the Ohio Supreme Court reviewed in detail her arguments. Her subjective belief that her argument was valid, does not change nor take away from the fact that she "could point to no specific actions or race- or gender-based remarks by the judge that would support her allegations of bias and that her allegation of gender bias was unreasonable given that both she and the judge were females." *Disciplinary Counsel v. Marshall*, 2014 WL 7671606 at ¶ 61. "Respondent also admitted that she conducted no research to determine the racial makeup of former counsel's firms and that she was unaware of anyone else who had similar experiences with the judge." *Id.*

Based on these facts, the Ohio Supreme Court found that "clear and convincing evidence supports the board's findings of fact and determination that no reasonable attorney would have made racial- or gender-bias allegations based on the limited information available to Marshall at the time she filed her appellate brief." *Id.* ¶ 62 ("On the facts before us, it appears that any bias that [the trial judge] may have exhibited against Marshall was likely to have been based not on her race or her gender but on her disobedience of the court's prior orders, her extensive efforts disqualify the judge, and her concerted efforts to avoid a ruling on the merits of former counsel's claim.").

This Court concludes that the record shows no due process violation or infirmity of proof establishing Respondent's misconduct that would give rise to a clear conviction that this Court could not accept as final the conclusion on that subject

### 3. Respondent's Third Argument

> I am not sure whether this court will take into account that Cuyahoga County has been riddled with corruption during the pendency of my case. *I am not making any allegations regarding my case*, but the Rules of Court and Constitutional

10

> framework did not apply in the case for which I have been sanctioned. I did not know it at the time, but the County was so riddled with corruption that Federal intervention was required. The result was a government overhaul, which included seven judges and the indictment and subsequent imprisonment of four. *I am not saying that my judge was involved*, but I asked for intervention from the Ohio Supreme Court because of what I saw as an obvious bias. It is my recollection that Disciplinary Counsel, during my hearing acknowledged the presence of bias. The problem is that they both believed and found that my disparate treatment argument was reckless and violated attorney conduct rules.

(Amended Response at 4) (emphasis added). Respondent's argument here too is not well taken.

The Court notes that, while Respondent does not make any allegations regarding her case or any allegation that the judge on her case was involved, she asks the Court to take into account that Cuyahoga County has been riddled with corruption during the pendency of her case. Corruption in Cuyahoga County that did not involve Respondent's case nor the judge on her case surely cannot support her request for this Court not to impose a different, less severe, discipline upon her.

To be clear, however, the Court reiterates it finding *supra* that there is no infirmity of proof or due process violation with regard to the board's finding that no reasonable attorney would have made racial- or gender-bias allegations based on the limited information available to Respondent. The Court further finds that Respondent's third contention does nothing to convince the Court that the imposition of the same discipline imposed by the Ohio Supreme Court would result in grave injustice or that the misconduct established is deemed by this Court to warrant substantially different discipline.

### 4. Respondent's Fourth Argument

> I am not trying to make light of my actions or inactions resulting in discipline. While it is obvious my opinion varied from that of the Ohio Supreme Court. The facts giving rise to this discipline occurred approximately nine years ago. It started before I began my practice in the Federal Court. This case has been litigated through the Federal Court with no sanctions imposed nor complaints filed. I have practiced consistently in the Federal Court, since 2006, with no complaints or sanctions. I have tried to practice in the Southern District, the only

11

>Federal Court in which I have practiced, with the utmost integrity. I would also like the court to note that the court was not unanimous in its decision on sanctions. I also know that the Federal Court does not have to agree with decisions of the state courts. I would hope that, in this case, it would find that an appropriate sanction would be less stringent and that it would be a grave injustice to impose the same discipline.

(Amended Response at 4.) Respondent's arguments is not persuasive.

Reviewing the record carefully, the Court does not find that a less stringent sanction is warranted nor that imposition of the identical sanction would result in a grave injustice. The length of the proceedings reflects Respondent's numerous opportunities to present her position on the issues before the board and the Ohio courts.

### 5. Conclusion

The Court concludes "that upon the face of the record upon which the discipline in [the Ohio courts] is predicated it" does not "clearly appear" that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or that the imposition of the same discipline by this Court would result in grave injustice; or that the misconduct established warrants substantially different discipline.

### IV.

In light of the foregoing, **IT IS THEREFORE ORDERED** that Respondent be suspended from the practice of law in this Court for two years, with the second year stayed on the conditions that she commit no further misconduct and make full restitution to William P. Campbell and M. David Smith in an amount to be determined by the Cuyahoga County Court of Common Pleas in *Dickson & Campbell, L.L.C. v. Marshall*, Cuyahoga C.P. No. CV–07–627533. pursuant to Rule II(E) of the Model Federal Rules of Disciplinary Enforcement adopted by this

Court on February 1, 1979. Respondent is hereby **ORDERED** to cease and desist from the practice of law in any form and is forbidden to appear on behalf of another before this Court.

**IT IS FURTHER ORDERED** that Respondent shall not be reinstated to the practice of law in this Court until (1) the Supreme Court of Ohio orders Respondent reinstated to the practice of law in Ohio and (2) this Court grants reinstatement pursuant to a petition for reinstatement filed by Respondent under Rule VII of the Model Federal Rules of Disciplinary Enforcement.

**IT IS FURTHER ORDERED** that Respondent is forbidden to counsel or advise, or prepare legal instruments for others or in any manner perform services of any kind for others that would constitute the practice of law in this Court. Respondent is also forbidden to hold herself out to another or to the public as being authorized to perform legal services, and she is hereby divested of all of the rights, privileges, and prerogatives customarily accorded to a member in good standing of the Bar of this Court.

**IT IS FURTHER ORDERED** that Respondent surrender her certificate of admission to practice in this Court to the Clerk of Court forthwith and that Respondent's name be stricken from the roll of attorneys maintained by this Court.

**IT IS FURTHER ORDERED** that within 30 days from the date of filing of this Order, Respondent shall:

1. Notify all clients being represented in pending matters in this Court and any co-counsel of her suspension and her consequent disqualification to act as an attorney as of the effective date of this Order, and, in the absence of co-counsel, also notify clients to seek legal services elsewhere, calling attention to any urgency in seeking the substitution of another attorney in her place;

2. Regardless of any fees or expenses due Respondent, deliver to all clients being represented in pending matters in this Court any papers or other property pertaining to the clients, or notify the clients or co-counsel, if any, of a suitable time and place where the papers or other property may be obtained, calling attention to any urgency for obtaining such papers or other property;

3. Regarding any actions pending in this Court, refund any part of any fees or expenses paid in advance that are unearned or not paid, and account for any trust money or property in Respondent's possession or control;

4. Notify opposing counsel in pending litigation in this Court or, in the absence of counsel, the adverse parties, of her disqualification to act as an attorney as of the effective date of this Order;

5. Transmit by certified mail all notices required by this Order, with all notices containing a return address where communications may be directed to Respondent;

6. File with the Clerk of this Court an affidavit showing compliance with this Order and Proof of Service of Notices required herein, with such affidavit setting forth the address where Respondent may receive communications;

7. Keep the Clerk of this Court advised of any change of Respondent's address; and

8. Retain and maintain a record of the various steps taken by Respondent pursuant to this Order.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall publish this Order to this Court's official website and issue certified copies of this Order to the Disciplinary Counsel of the Supreme Court of Ohio, to the Clerks of the Supreme Court of the United States and the United

States Court of Appeals for the Sixth Circuit, to its Divisional Offices, and to the National Discipline Data Bank.

<table>
<tr><td>2-11-2015<br>DATE</td><td>/s/ <br>EDMUND A. SARGUS, JR.<br>CHIEF JUDGE UNITED STATES DISTRICT COURT</td></tr>
</table>